# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

QATALYST INC., derivatively on
behalf of EXPECT QUEST, LLC,

    Plaintiff,

v.   Case No: 8:24-cv-941-CEH-AEP

PIPES.AI, LLC, 805GURU, LLC and
DREW THORNE-THOMSEN,

    Defendants.
_____/

## ORDER

This matter comes before the Court on Defendants' Motion to Dismiss Verified Second Amended Derivative Complaint (Doc. 29). In the motion, Defendants request the Court dismiss Plaintiff's Second Amended Derivative Complaint for lack of subject-matter jurisdiction, lack of personal jurisdiction, because venue is improper, and for failure to state a claim. Plaintiff filed a response in opposition. Doc. 33. The Court, having considered the motion and being fully advised in the premises, will grant Defendants' Motion to Dismiss Verified Second Amended Derivative Complaint and dismiss Plaintiff's Second Amended Complaint for lack of subject matter jurisdiction.

**I.     BACKGROUND[1]**

---

[1] Unless stated otherwise, the following statement of facts is derived from the Second Amended Derivative Complaint (Doc. 22).

In this derivative action that is before the Court based on diversity of citizenship, Plaintiff, Qatalyst, Inc. ("Qatalyst") brings state law claims on behalf of Expect Quest, LLC ("Expect Quest") against Defendants Pipes.AI, LLC ("Pipes.AI"), 805Guru, LLC ("805Guru"), and Drew Thorne-Thomsen ("Thorne-Thomsen"). Doc. 22.

### A. Jurisdictional Allegations

The parties and their citizenship follow. Qatalyst is a Florida corporation with its principal place of business in Pinellas County, Florida. *Id.* ¶ 7. Expect Quest is a Florida limited liability company with two members–Qatalyst and Robert Graham Enterprises, LLC ("RGE")–who each is a co-managing member and 50 percent owner of Expect Quest. *Id.* ¶¶ 7, 34, 39. RGE has two members, Robert Graham and Douglas Winslow, both of whom are citizens of Florida. *Id.* ¶¶ 4–6. Thus, Expect Quest is a Florida citizen.

Pipes.AI is a Delaware limited liability company with three members: Drew Thorne-Thomsen, Eric Evans, and Eric Hargett. *Id.* ¶ 8; Doc. 27 at ¶¶ 4a–c. Drew Thorne-Thomsen and Eric Hargett are California citizens, while Eric Evans is a Texas citizen, making Pipes.AI a citizen of both California and Texas. *Id.* ¶¶ 9–11; Doc. 27 at ¶¶ 4a–c. Defendant 805Guru is a California limited liability company, and Drew Thorne Thompson is its sole member. *Id.* ¶ 12. 805Guru is a California citizen.

### B. Procedural History

On April 19, 2024, Plaintiff Qatalyst filed its derivative action complaint in this Court naming 805Guru, Pipes.AI, Thorne Thompson, and Expect Quest as

2

Defendants. Doc. 2 ¶¶ 3–6. On April 25, 2024, this Court entered an Order directing Qatalyst to show cause why the case should not be dismissed for lack of subject-matter jurisdiction due to Qatalyst's failure to adequately allege the parties' citizenship. Doc. 11. As noted in the Court's order, Qatalyst failed to identify in its initial Complaint the members of the limited liability companies or allege the members' citizenship. Qatalyst filed a response (Doc. 13) to the Court's Order to Show Cause and filed a Second Amended Complaint (Doc. 22), more specifically alleging the parties' citizenship and realigning Expect Quest (a Florida citizen) as a nominal Plaintiff. Doc. 22.

Plaintiff has filed this case as a derivative action under Florida law. The Second Amended Complaint alleges the following state law claims: Aiding and Abetting a Breach of Fiduciary Duties against Thorne-Thomsen, Pipes.AI, and 805Guru (Counts I, II, III); Conspiracy to Breach Fiduciary Duties against Throne-Thomsen, Pipes.AI, and 805 Guru (Counts IV, V, VI); Tortious Interference with Contract against Pipes, 805Guru, and Thorne-Thomsen (Counts VII, VIII, IX); and Tortious Interference with Business Relationship against Pipes.AI, 805 Guru, and Thorne-Thomsen[2] (Counts X, XI, XII). Doc. 22.

### C.   Related State Court Litigation

This is not the first instance of litigation involving these entities and related issues. *See* Doc. 29 at 3. Approximately two years earlier, in March 2022, Qatalyst

---

[2] Though Count XII is titled "Tortious Interference with Contract against Thorne-Thomsen," the facts within this Count allege and seek relief for Tortious Interference with Business Relationships. The tortious interference with contract claim is alleged against Thorne-Thomsen in Count IX.

sued RGE, Robert Graham, and Doug Winslow, in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, Case No. 22-000971-CI. *See* Doc. 29 at 3; *see also* Doc. 46-3. Also on March 1, 2022, Qatalyst, on behalf of Expect Quest, filed a derivative action in state court against RGE, On Target Data Services, Inc., Robert Graham, Doug Winslow, and Expect Quest, as a nominal defendant, in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, Case No. 22-000972-CI. *See* Doc. 29 at 3; *see also* Docs. 46-1, 46-2. These cases have been consolidated and are still pending in state court.

### D. Nature of the Dispute

Qatalyst, RGE, and Expect Quest work in the "lead generation" industry. Doc. 22 ¶ 35. RGE and Qatalyst began working together in 2020 to generate leads for companies selling insurance in the Medicare business. *Id.* ¶ 36. As part of their partnership, both RGE and Qatalyst were the managing members of Expect Quest. *Id.* ¶ 34(c). Under the partnership, RGE owed a fiduciary duty to Qatalyst related to RGE's role in telemarketing to the Medicare market for the benefit of Expect Quest. *Id.* ¶ 41.

As part of the lead generation industry, Pipes.AI uses a technology platform to turn business leads into live marketing calls to assist in their processing for sales. *Id.* ¶ 44. 805Guru is a consulting firm that further assists in digital and telephone marketing. *Id.* ¶ 48. RGE hired Pipes.AI to process leads as they related to the work being done for Expect Quest. *Id.* ¶ 51. This business relationship centered on exploiting Expect

Quest's pre-existing contracts with other Medicare market entities, SelectQuote and EverQuote. *Id.* ¶ 52. 805Guru, Thorne-Thomsen, and Pipes.AI worked together to provide services to RGE and Expect Quest. *Id*. ¶ 45. At all times, Pipes.AI, Thorne-Thomsen, 805Guru, and RGE were aware of the fiduciary duty and partnership between RGE and Expect Quest and Qatalyst. *Id.* ¶¶ 56–57.

Thorne-Thomsen, Pipes.AI, and 805Guru crafted targeted communications to Florida to induce insurance agencies, including SelectQuote and EverQuote, to cancel their contracts with Expect Quest and enter into new contracts and relationships with RGE instead. *Id.* ¶ 63. Knowing that Expect Quest had contracts with SelectQuote and EverQuote, Defendants Thorne-Thomsen, Pipes.AI, and 805Guru nevertheless directed oral and written communications in Florida to assist RGE in its efforts to induce SelectQuote and EverQuote and other companies to end their contractual relationships with Expect Quest. *Id.* ¶ 65.

805Guru, Thorne-Thomsen, and Pipes.AI had specialized contacts and knowledge within the Medicare market. *Id.* ¶¶ 83, 97, 111. They used their knowledge and contacts to facilitate RGE's efforts to induce SelectQuote and EverQuote to end their business relationships with Expect Quest in favor of RGE. *Id*. ¶¶ 120, 128, 136.

Qatalyst alleges that Qatalyst, David Ruelas (Qatalyst's CEO), and Expect Quest were excluded from all communications from Thorne-Thomsen to RGE and SelectQuote regarding SelectQuote and EverQuote's contract cancellation. *Id.* ¶ 82. Qatalyst, Expect Quest, and David Ruelas were further excluded from communications between 805Guru and RGE regarding SelectQuote and EverQuote's

5

contract cancellations with Expect Quest. *Id.* ¶ 109. As a result of the targeted communications and work of 805Guru, RGE, Pipes.AI, and Thorne-Thomsen, SelectQuote and EverQuote cancelled their contracts with Expect Quest and created new contracts with RGE. *Id.* ¶ 66. The contract cancellations have excluded Expect Quest from the relationships with these companies. *Id.* ¶ 67. As a result of Defendants' conduct, Qatalyst alleges it suffered damages in Florida. *Id.* ¶¶ 68–72.

E. **Motion to Dismiss (Doc. 29) and Response (Doc. 33)**

In their motion to dismiss (Doc. 29), Defendants argue that the Court lacks subject matter jurisdiction to consider the dispute because Expect Quest must be properly realigned as a Defendant, which would destroy diversity. Doc. 29 at 7. Defendants argue that due to the antagonism of RGE and Expect Quest with the goals of Qatalyst, Expect Quest cannot properly be aligned as a nominal Plaintiff. *Id.* Defendants further argue the Court lacks personal jurisdiction over the Defendants, venue is improper, and Qatalyst fails to state a claim upon which relief can be granted. *Id.* at 10-25.

Qatalyst responds in opposition to Defendants' motion, arguing that this Court may exercise subject matter jurisdiction over this action because the company is deadlocked, allowing for proper alignment of Expect Quest as a Plaintiff. Doc. 33 at 2–5. Qatalyst also argues personal jurisdiction and venue are proper, and that the Second Amended Derivative Complaint adequately states causes of action against these Defendants.

### F.     Other Documents Filed Regarding Pending Motion to Dismiss

In support of their motion to dismiss, Defendants file several documents from the related state court proceedings. Relevant to the issue of subject matter jurisdiction, Defendants filed Qatalyst's answers to interrogatories in the state court litigation. Docs. 46-1, 46-2, 46-3. In its sworn response to an interrogatory requesting a description of RGE's wrongful actions, Qatalyst states "financial and operational information ceased being available to Qatalyst through Expect Quest, and was integrated by the Defendants into the records of RGE, to which Qatalyst and Ruelas had no access. Having full control and exclusive awareness of the financial and operational information of Expect Quest, the Defendants provided only selective and limited disclosure (if any at all) to Qatalyst and Ruelas regarding Expect Quest operations. Further, Defendants did not accept the [sic] any of the recommendations of Qatalyst or Ruelas, and undertook every effort to circumvent Qatalyst's authority as a managing member of Expect Quest." Doc. 46-1 at 5; *see also* Doc. 46-3 at 4. Qatalyst also responded to interrogatories stating, "[a]lthough the Operating Agreement of Expect Quest required all corporate actions to be by consensus, in fact, once RGE gained control of the operations, RGE and its Managers, On Target, Graham, and Winslow, excluded Ruelas and Qatalyst from all decisions and actions taken on behalf of Expect Quest." Doc. 46-2 at 6. Relevant to the personal jurisdiction issue, Defendants filed the Declarations of Eric Evans, co-founder and CEO of

7

Pipes.AI (Doc. 27), and Drew Thorne-Thomsen, the founder, CEO, and only member and employee of 805Guru (Doc. 28).[3]

In opposition to the motion to dismiss, Qatalyst filed the Declaration of David Ruelas. Doc. 33-1. Attached to the Ruelas Declaration is the Expect Quest LLC Operating Agreement, which is signed by its members: Qatalyst and RGE. *Id.* at 9–29. Ruelas signed on behalf of Qatalyst as its chief executive officer, and Rob Graham signed on behalf of RGE as its managing member. *Id.* at 29. Schedule "A" to the agreement reflects Qatalyst and RGE are both managing members and 50% owners. Doc. 33-1 at 30. The Operating Agreement provides that "unless otherwise specifically provided in this operating agreement, all approvals, consents, authorizations, and other actions taken by managing member(s) shall require the affirmative vote of the members holding a majority in interest." Doc. 33-1 at 3, 15. The Ruelas Declaration states, "[t]here is currently a deadlock in management of [Expect Quest]. RGE has one vote and Qatalyst has one vote. Neither Qatalyst nor RGE have the ability to obtain an affirmative vote of the members holding a majority interest in [Expect Quest]. Accordingly, management is deadlocked and unable to act." Doc. 33-1 at 3 ¶ 12. Also

---

[3] In his Declaration, Thorne-Thomsen states that 805Guru is not registered in Florida, nor does it have offices or employees in Florida. Doc. 28 ¶¶ 3, 4, 5. 805Guru does not own or rent any real property in Florida and does not advertise or participate in seminars promoting its services in Florida. *Id.* ¶¶ 6, 7. Evans' Declaration states that Pipes.AI and 805Guru are not affiliated in any respect. Doc. 27 ¶ 6. To the extent that Pipes.AI performs any maintenance or services regarding the communications platform, it does so from its offices in Texas. *Id.* ¶ 9. Like 805Guru, Pipes.AI does not have Florida offices, employees who live or work in Florida, does not own or rent real property in Florida, is not registered to do business in Florida, and does not regularly advertise in Florida or participate in seminars promoting its services in Florida. *Id.* ¶¶ 11–14.

8

attached to the Ruelas Declaration are emails, Slack[4] communications, and other documents that Plaintiff cites in support of its personal jurisdiction argument. Doc. 33-1 at 32–461. Qatalyst also files the deposition transcript of Drew Thorne-Thomsen (Doc. 34-1), with certain excerpts highlighted (Doc. 33-2).[5]

## II. LEGAL STANDARD

### A. Subject Matter Jurisdiction

Congress granted district courts original subject matter jurisdiction over civil actions sitting in diversity. 28 U.S.C. § 1332. Diversity jurisdiction exists where the lawsuit is between citizens of different states and the amount in controversy exceeds $75,000. *Id*. § 1332(a)(1). Each defendant must be diverse from each plaintiff for diversity jurisdiction to exist under 28 U.S.C. § 1332. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999). A limited liability company is deemed "a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (per curiam). However, when a limited liability company is a member of another limited liability company, the citizenship of that limited liability company's member must be

---

[4] Slack is a communications platform similar to WhatsApp. Doc. 33 at 7 n.11.
[5] Qatalyst attaches the Thorne-Thomsen deposition to challenge the Thorne-Thomsen Declaration and to offer evidence of tortious conduct in and connections to Florida through email and Slack communications purportedly sent by Thorne-Thomsen from his Pipes.AI email address to Ruelas, RGE, Graham, Winslow, Expect Quest, and Qatalyst in Florida. *See* Doc. 33 at 8–9. The deposition of Thorne-Thomsen was taken in the related state court litigation.

ascertained. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1220 (11th Cir. 2017).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction; Rule 12(b)(1) permits a facial or factual attack. *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). On a Rule 12(b)(1) facial attack, the court evaluates whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction" in the complaint and employs standards like those governing Rule 12(b)(6) review. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013). A Rule 12(b)(1) factual attack, such as the motion here, "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation and internal quotation marks omitted). When the attack is factual, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* Therefore, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

### B. Applicable Law

In diversity actions such as this one, the Court is required to apply the substantive law of the forum state, including its choice of law rules. *Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78

10

(1938). The fiduciary duties that an officer or director owes to a corporation concern the internal affairs of the corporation. *See Edgar v. MITE Corp*., 457 U.S. 624, 645 (1982) ("matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders" are a corporation's internal affairs). Under Florida law, "[c]laims involving 'internal affairs' of corporations . . . are subject to the laws of the state of incorporation." *Chatlos Found., Inc. v. D'Arata*, 882 So. 2d 1021, 1023 (Fla. 5th DCA 2004) (citation omitted).

## III.   DISCUSSION

In moving to dismiss, Defendants assert that complete diversity of citizenship does not exist between Qatalyst and Defendants when Expect Quest, a Florida citizen, is properly aligned as a Defendant. Defendants' subject matter jurisdiction attack constitutes a factual challenge, not a facial challenge, because they challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and introduce evidence outside the pleadings.

A federal court must always dismiss a case upon determining that it lacks subject matter jurisdiction, regardless of the stage of the proceedings, and facts outside of the pleadings may be considered as part of that determination. *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 n.6 (11th Cir. 2001). For the reasons discussed below, Qatalyst fails to carry its burden of proving complete diversity of citizenship. Accordingly, this action is due to be dismissed for lack of subject matter jurisdiction.

"There is no question that a corporation is an indispensable party in a derivative action brought by one of its shareholders." *Liddy v. Urbanek*, 707 F.2d 1222, 1224 (11th

11

Cir. 1983). Thus, Expect Quest is indispensable to this Florida derivative action. The jurisdictional issue before the Court on the instant motion is whether Expect Quest, a Florida citizen that was initially named as a nominal Defendant and then realigned as a nominal Plaintiff in the Second Amended Complaint, is more appropriately aligned as a Defendant, which would result in destroying diversity and the Court's subject matter jurisdiction. When determining whether diversity jurisdiction exists, courts are not bound by the alignment specified in the pleadings. "Rather, an inquiring court should look beyond these formalities and attempt to determine, to the extent practicable, the actual interests of the parties." *Gabriel v. Preble*, 396 F.3d 10, 14 (1st Cir. 2005) (citing *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69–70 (1941)). That is because when diversity of citizenship is the sole ground of jurisdiction, the parties shall be aligned in accordance with their real interest in the controversy. *De Graffenreid v. Yount-Lee Oil Co.*, 30 F.2d 574, 575 (5th Cir. 1929).[6]

In derivative actions, corporations are generally first styled as defendants. *See* 7C Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1822 (1986) (collecting cases). As discussed by the Eleventh Circuit, "[i]n this way, the stockholder insures the presence of the corporation as an indispensable party. Once joined and present before the court, the corporation is then realigned, if necessary, according to its real interests." *Liddy*, 707 F.2d at 1224.

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

A party may be properly aligned as a plaintiff in a derivative action if it is a party in interest that stands to benefit from a successful suit. *Liddy*, 707 F.2d at 1224. However, an exception to this rule exists when an actual controversy or a real collision of interests between the parties is evident. *Smith v. Sperling*, 354 U.S. 91, 95 (1957); *see also Duffey v. Wheeler*, 820 F.2d 1161, 1163 (11th Cir. 1987) (explaining that an "exception applies when the corporation is 'actively antagonistic' to the plaintiff's interests"). If corporate management is "antagonistic" to a plaintiff shareholder, then the shareholder and corporation are more appropriately aligned on opposing sides of the controversy. *Liddy*, 707 F.2d at 1224. In such situations, the corporation is properly named as a defendant. *Id.*; *see also Swanson v. Traer*, 354 U.S. 114, 116 (1957). That exception applies here.

In its initial complaint, Qatalyst named Expect Quest as a nominal Defendant. Doc. 2. However, Qatalyst now argues that Expect Quest is more appropriately aligned as a Plaintiff given the 50-50 ownership of its managing members resulting in the company's deadlock status. Qatalyst relies on *Duffey v. Wheeler*, 820 F.2d 1161 (11th Cir. 1987), for the proposition that in cases in which a corporation's management or its shareholders are deadlocked with respect to a particular issue, courts have realigned such corporation as party plaintiffs. *See id.* at 1163.

Qatalyst and RGE are the managing members of Expect Quest and any action taken by the managing members requires an affirmative vote. Qatalyst cites Expect Quest's operating agreement and Ruelas' Declaration for its argument that because each of the two managing members have an equal vote, neither holds a majority to

13

obtain an affirmative vote, resulting in management being deadlocked. *See* Doc. 33-1 ¶¶ 11, 12.

In *Duffey*, however, while there was deadlock of management, there was no allegation of antagonism. Instead, plaintiff alleged that management's division or lack of agreement on certain issues made it incapable of undertaking action because they could not agree upon any action. As the *Duffey* court explained, "[m]ere inaction, or inability to act on the part of the corporation, because of a deadlock between those who control the corporation has not been found to be the equivalent of active antagonism." *Duffey*, 820 F.2d at 1163.

In contrast, the allegations of Qatalyst's Second Amended Complaint reflect active antagonism by Expect Quest's management, beyond merely a deadlock on issues between controlling interests. The Supreme Court has held that in these types of cases, the presence of antagonism is determined from the face of the pleadings and the nature of the dispute. *Sperling*, 354 U.S. at 96; *see also Liddy*, 707 F.2d at 1224. "[I]f the complaint in a derivative action alleges that the controlling shareholders or dominant officials of the corporation are guilty of fraud or malfeasance, then antagonism is clearly evident and the corporation remains a defendant." *Liddy*, 707 F.2d at 1224 (citing *Swanson v. Traer*, 354 U.S. 114 (1957)).[7] Here, Qatalyst has alleged the malfeasance of managing member RGE.

---

[7] In *Liddy*, there were related ongoing state court proceedings, and the appellate court noted, with disapproval, the blatant inconsistency in the positions taken by Liddy in the federal court compared to the state court in an effort to preserve federal jurisdiction. *Liddy*, 707 F.2d at 1225. Although the fact that Qatalyst filed related state court proceedings here is not

14

The *Liddy* case also involved 50-50 co-owners, but there were no allegations or basis upon which the corporation was actively opposed to the litigation through its management, and therefore no reason to align the corporation as defendant. *Id.* at 1225. Liddy alleged that he was the majority stockholder and served as president of the corporation throughout its existence. *Id.* The appellate court found this supported the fact that the company was not controlled and/or dominated by the co-owner Urbanek to align the company as a defendant with Urbanek. *Id.* "[I]f the individual plaintiff is the majority stockholder or a controlling officer, then the corporation cannot be deemed antagonistic to the suit and it should be realigned as a plaintiff." *Liddy*, 707 F.2d at 1224–1225.

Applying the *Liddy* concepts to the allegations of Plaintiff's Second Amended Complaint reveals the antagonism between Qatalyst and Expect Quest because of co-managing member RGE's alleged conduct and control. Qatalyst attempts to argue that Expect Quest is properly aligned as a Plaintiff. But it alleges RGE's malfeasance in the form of co-conspiratorial and tortious conduct. Qatalyst alleges RGE diverted assets, contracts, and business opportunities and reaped financial gains and other benefits from its wrongful conduct. Doc. 22 ¶ 34. Qatalyst alleges that Expect Quest's managing member RGE induced SelectQuote and EverQuote to end their contractual and business relationships with Expect Quest. *Id.* ¶ 65. RGE is alleged to have

---

determinative of Expect Quest's status as a plaintiff or defendant in this Court, it is not lost on the Court that Expect Quest was named as a *defendant* by Qatalyst in the state court action.

15

breached its fiduciary duties, *id.* ¶¶ 68, 69, and to being a co-conspirator in the breach of fiduciary duties. *Id.* ¶ 70.

The exception to the alignment of parties in a derivative situation applies when antagonism is evident on the face of the pleadings and by the nature of the controversy. *Sperling*, 354 U.S. at 96–97. Qatalyst attempts to distinguish its situation claiming the antagonism is with RGE, not Expect Quest. But this argument misses the mark. The antagonism may be demonstrated when "it is plain that the stockholder and those who manage the corporation are completely and irrevocably opposed." *Id.* at 97. Due to the antagonism present between RGE (which the record supports was in control of Expect Quest) and Qatalyst, Expect Quest is not properly aligned as a plaintiff.

The nature of the controversy and antagonism is further evidenced in Qatalyst's answers to interrogatories from the state court action in which Qatalyst states RGE gained control of the Expect Quest operations and excluded Ruelas and Qatalyst from all decisions and actions taken on behalf of Expect Quest. While the Court need not accept the truth of Qatalyst's statements, it may take judicial notice of the state court filings and the fact the statements were made. *See* Fed. R. Evid. 201(c)(1) (court "may take judicial notice on its own"); *see also Cash Inn of Dade, Inc. v. Metro. Dade Cty.*, 938 F.2d 1239, 1243 (11th Cir. 1991) (Court may take judicial notice of "public records within its files relating to the particular case before it or other related cases.").

When Expect Quest is properly aligned as a Defendant, diversity of citizenship and the Court's subject matter jurisdiction is lacking because both Qatalyst and Expect

16

Quest are Florida citizens. Thus, the Second Amended Complaint is due to be dismissed for lack of subject matter jurisdiction.

"The jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case, and cannot be waived or otherwise conferred upon the court by the parties." *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1000 (11th Cir. 1982). "Federal courts are courts of limited jurisdiction." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999). And "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Id.* at 410.

In their motion to dismiss, Defendants additionally argue dismissal is warranted because the Court lacks personal jurisdiction, venue is improper, and the Second Amended Complaint fails to state a claim. "[A] federal court may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). Thus, having determined that subject-matter jurisdiction is lacking, the Court should not provide an advisory opinion as to whether Qatalyst's Second Amended Derivative Complaint states a claim. Additionally, while there may be circumstances in which a district court will appropriately prioritize a personal jurisdiction inquiry, customarily, a federal court first resolves its subject-matter jurisdiction. *Id.* at 578, 587–88. (finding that "engaging subject-matter jurisdiction at the outset of a case . . . [is] both expedit[ious] and sensitive[e] to state courts' coequal stature").

17

## IV.  CONCLUSION

This action is due to be dismissed for lack of subject matter jurisdiction because the Court lacks diversity jurisdiction and Plaintiff does not invoke another basis for the Court's subject matter jurisdiction. Because a dismissal for lack of subject matter jurisdiction is not a judgment on the merits, the dismissal is without prejudice. *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (per curiam). As such, the Court's dismissal will be without prejudice. Accordingly, it is

**ORDERED**:

1. Defendants' Motion to Dismiss Verified Second Amended Derivative Complaint (Doc. 29) is **GRANTED** for lack of subject matter jurisdiction.

2. Qatalyst's Second Amended Complaint is **DISMISSED without prejudice**.

3. The Clerk is directed to terminate any pending motions and deadlines and **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on March 26, 2025.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any